DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

# STATE OF NEW JERSEY

## JUNE TERM, 1868.

---

FRANKLIN COOK, COLLECTOR OF NORTHAMPTON, v. THE STATE, THE CAMDEN AND BURLINGTON COUNTY RAILROAD COMPANY, PROSECUTORS.

1. By an act of sixth of February, 1866, the Burlington County Railroad Company, and the Horse Railroad Company from Camden to Mount Holly, were consolidated under the name of the Camden and Burlington Railroad Company. The ninth section of the act provides that "whenever the net earnings of said consolidated company shall, over expenses and interest, amount to six per cent. per annum, the said company shall pay to the treasurer a tax of one-half of one per cent. upon the cost of said road, to be paid annually, and such other state tax as may be assessed from time to time, by a general law, applicable to all railroads over which the legislature shall have power, for that purpose, at the time of the passage of such law or laws." The company having been taxed upon its capital stock, amounting to two hundred and twenty thousand six hundred and four dollars, and upon its real estate, valued at seven thousand dollars, and there having been no such general law passed as contemplated in said section. *Held*, that according to a just construction of the said ninth section, the assessment was illegal.

2. It appearing, however, that a portion of the real property which the prosecutors were expressly allowed to hold was used, not by the com-

474

pany nor for railroad purposes, but rented for a coal yard, it was *held*, that such portion was liable to taxation, and that the assessment as to that part was valid.

On writ of error to the Supreme Court.

See *Vol.* 3, 338.

For plaintiff in error, *F. Voorhees* and *J. Wilson.*

For defendants, *E. Merritt* and *A. Browning.*

THE CHANCELLOR. The tax, the assessment of which was confirmed in the Supreme Court, was assessed upon the prosecutor under the tax act of April, 1866. Part of the tax was upon the real estate of the company, the greater part was upon its capital stock levied by virtue of the provisions of the fifteenth section of that act. The section provides that all private corporations of the state, except those which by virtue of any contracts in their charters or other contracts with this state, are expressly exempted from taxation, shall be assessed and taxed at the full amount of their capital stock paid in, and their accumulated surplus. This assessment was made in 1866, on the amount of the capital stock paid in, and on real estate valued at seven thousand dollars.

The assessment on the capital is disputed, on the ground that the prosecutor is within the exception of the fifteenth section, and is exempted from taxation, by a contract with the state.

The prosecutor is a company created by the act of February 6th, 1866, by which the Burlington County Railroad Company was consolidated with the Camden, Moorestown, Hainesport, and Mount Holly Horse Car Railroad Company. By the first section of this act of consolidation it was declared that " all and singular the franchises, privileges, powers, and immunities of the two consolidated companies respectively, granted by or acquired under their respective charters, and

the several supplements thereto should vest in the said Camden and Burlington County Railroad Company." By the charter of the Horse Car Railroad Company, approved March 15th, 1859, it was provided in the sixteenth section, that when its profits reached seven per cent. it should pay to the state a tax of one-half of one per cent. on the cost of the road, and that " no other tax or impost should be levied from said corporation, by virtue of any law of this state." The original charter of the Burlington County Railroad Company, approved February 11th, 1848, by its fourteenth section, provided for the payment of a tax of one-half of one per cent. on the cost of the road, whenever the net proceeds amount to six per cent. per annum on its cost. And that no other tax or impost for the use of this state shall be levied or assessed upon the said company."

The ninth section of the act of consolidation above mentioned provides, "that as soon as the said railroad from Camden to Mount Holly shall be finished, the president of the said consolidated company shall file, under oath or affirmation, a statement of the costs of the railroads of said consolidated company in the office of the secretary of state, and annually thereafter he shall, under oath or affirmation, make a statement to the legislature of this state of the proceeds and expenses of said roads ; and whenever the net earnings of said consolidated company shall, over expenses and interest, amount to six per centum per annum upon its capital stock, the said company shall pay to the treasurer of the state a tax of one-half of one per centum upon the cost of said road, to be paid annually, on or before the fourth Monday of January ; and such *other state tax* as may be assessed from time to time, by *a general law applicable* to all railroads over which the legislature shall have power for that purpose, at the time of the passage of such law or laws."

This provision which seems strange when read by itself, is very intelligible in all its details when read in connection with the provisions of the first section, and the tax clauses

of the two other charters first referred to; and if it be the fact, as attempted to be shown by reading the printed bill, as originally introduced, that a positive provision for exemption like that contained in the act of 1859, was struck out on the passage of the bill to make room for the provision for *such other state tax*, it is perfectly consistent with the enactment in the first section, that the consolidated company should have every immunity of each of the original companies. The charter of one at least at the end of the provision for the payment of tax to the state of one-half of one per cent. declared, that no other tax should be levied; it was not necessary to repeat that provision here, it might be well struck out. But there would seem to be reason for inserting a provision that the state might add to the tax reserved, by a general law affecting all such corporations. To be sure the state, by the reserved power to repeal or alter this charter, could do this without such provision, but without it there would be what appears like a contract on part of the state not to impose any further tax, which, although the state has power to annul or repudiate as a contract made by an infant or one void by the statute of frauds, can be repudiated, yet as in these cases even a state does not like to change or vary from its promises without sufficient cause, or without an understanding that, under certain circumstances, it will exercise the power to change. This peculiar provision seems to have been first introduced into an act passed in 1864, to extend the time for the purchase, by the state, of the road and franchises of the New Jersey Railroad Company, and as the charter of that company was an irrepealable contract, no such power could be exercised of increasing the tax upon it, unless it was positively reserved by the state. The same reservation has been inserted in several instances since in charters which can be altered or repealed, for the same reason it was in this consolidation act. Chapters 280, 281, 287, 344, and 382, of the acts of 1864, and 279, 291, and 359, of the acts of 1865, are examples of this.

Under this view of the acts of incorporation, and the act of consolidation, there is no difficulty in arriving at the same result as that reached by the Supreme Court, that the prosecutor is, by contract with the state, expressly exempted from taxation, and therefore not liable to an assessment on its capital stock, being within the exemption of the fifteenth section of the tax act of 1866, under which alone it can be so taxed.

We are more satisfied to place it on the ground of this express exemption than on the ground of exemption by implication from the provisions of the ninth section of the consolidation act upon which it was placed by the opinion of the Supreme Court. The position that no person or corporation shall be held as exempt from taxation, one of the highest and most important of the sovereign powers of the state, unless by clear and express words, or an implication as strong and conclusive as express words, is one founded on principles that are incontrovertible, and application of which to cases like this is established by authorities which we cannot disregard. It was so held by the Supreme Court of the United States, in *The Providence Bank* v. *Billings*, 4 *Peters* 515; in *The Bridge Proprietors* v. *The State*, 1 *Zab.* 384, affirmed in this court, 2 *Zab.* 593, with but one dissenting voice. And in *The State* v. *Newark*, 2 *Dutcher* 519, Justice Ogden, in delivering the opinion of the court said: "It is an essential attribute of sovereignty inherent in the people, and not to be abridged in their hands by *presumption*, but only by *positive* legislative enactments clearly *expressed*." And in a case not yet reported, decided at the last February Term of the Supreme Court, *The State* v. *Parker, Receiver of Taxes*, 3 *Vroom* 548, that court in its opinion delivered by Justice Depue, says: "The power of taxation will never be presumed to be relinquished unless the intention to do so is declared in clear and unambiguous terms." In the case of *The State* v. *Fraiser*, 4 *Zab.* 370, in which the prosecutor was held free from taxation, it was so declared in its charter by express terms, and the court held that by the correct *construction* of

the act, the clause limiting the duration of the exemption did not apply to county and local taxes, but to state taxes only.

In the case of *The New York and Erie Railroad Company* v. *Sabin*, 2 *Casey* 242, in the opinion of the court delivered by Justice Woodward, it is laid down " that the surrender is not to be presumed, but must be evinced by terms so explicit as to leave no doubt of the legislative intention to part with it." And the question then determined was not whether the company were exempt by contract, but whether, under the general terms in the tax act, the legislature intended to impose a double tax on property for which they had specially provided taxation.

Another question is raised as to the real estate.

It is insisted on part of the township that so much of the real estate held by the company as is used for other purposes than its proper business is liable to taxation. It appears that it owns one acre at Mount Holly, acquired for the purpose of a depot, and that one lot of this acre is used not by the company, nor for railroad purposes, but is rented out for a coal yard. By the fourteenth section of the charter of the Horse Car Company, it was authorized to hold at each terminus and stations lands not exceeding five acres, and to build on them houses, warehouses, and other buildings for the safety of property, construction of carriages, and other necessary uses, and to take the rent, profits, and emoluments thereof. This franchise is *now vested in the prosecutor*.

The company have thus, by express grant, the power to acquire and hold this land.

It has been settled in this state, in the case of *The State* v. *Mansfield*, 3 *Zab.* 510, and again, in *The State* v. *Newark*, 2 *Dutcher* 519, that property held by a corporation for the purposes for which it was chartered and necessary for them, should be free from tax, when such exemption was granted to the company, but if held or used for other purposes, even if connected with and convenient for the transaction of its business, it should not be free. Yet in neither of these cases

is the question considered or decided whether property which the company is expressly authorized to hold, shall be exempt when used for purposes not authorized by the charter.

The language of these decisions, and the reasoning on which they are founded, would seem to exclude from the exemption all property used for other purposes, whether authorized to be held or not. The authority to acquire property not exceeding a certain amount must be considered and construed in reference to the objects for which it may be held, and to mean so much of the limited amount as is needed for those objects, and the exemption from taxation must be limited to property held for those objects, and for no other.

A company may very properly acquire more land for its track or depots than required for present use; it is generally wise to do so  And if it holds such excess unoccupied until required for the objects of the charter, it will hold it free from taxation, both according to the letter and spirit of the exemption.  But if it finds profit in renting out lands not needed for its own present use, it must and ought to pay for them the same taxes that others pay for like property. Otherwise a company authorized to acquire a roadway, not exceeding one hundred feet in width, might take the whole width in a city, construct its road on forty feet of it, and on the remaining sixty erect, and for years maintain and rent out factories, warehouses, and other buildings free from all taxation.  The power to take the rents expressly granted in this particular charter would, at first, seem intended to give power to hold lands not needed for railroad business, but this grant may be well held to apply to rooms or buildings rented out and occupied for restaurants or baggage expresses, or other like purposes, appropriated to and connected with the business of the company, and which are needed at such places, and usually provided by these corporations through their lessees.

The conclusion arrived at does not conflict with or control the ruling of this court in the case of *The State* v. *Leester*,

5 *Dutcher* 541. The opinion of the court in that case approves and affirms the doctrine of the Supreme Court in the cases above referred to. But it places the Elizabeth Library Company outside of them upon the ground that its charter authorized it to hold both stocks and real estate for the purpose of producing an income to support its enterprise, and expressly exempted the property so held from taxation.

So far as the coal yard is concerned, the prosecutor is liable to taxation, and the decision of the Supreme Court must be reversed. The record must be remitted to the Supreme Court, that it may amend the assessment upon the real estate according to the power vested in it for that purpose, and affirm the same to the amount which may be the assessment upon the coal yard, and reverse the same as to the excess on the real estate. And the judgment of the Supreme Court as to the assessment on the capital stock must be affirmed.

The following members of the court concurred in opinion with the Chancellor:

The CHIEF JUSTICE, VREDENBURGH, WOODHULL, DEPUE, OGDEN, WALES, VAIL. 8.

The following members dissented :
OLDEN, KENNEDY. 2.

And thereupon it was ordered that the record and proceedings be remitted to the Supreme Court, that they may proceed thereon in conformity with the judgment of this court.

CITED in *State, Foster Home Soc., pros.*, v. *Newark*, 6 *Vr.* 164; *State, N. J. R. R. Co., pros.*, v. *Hancock*, 6 *Vr.* 545; *State, Water Comm'rs, &c., pros.*, v. *Gaffney*, 5 *Vr.* 132.